**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
Austin Division

| | | |
|---|---|---|
| Eric M. Sanders, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:10-CV-192-LY |
| | § | |
| Harold H. Flanders | § | |
|     Defendant. | § | |

**PROPOSED JOINT FINAL PRETRIAL ORDER**

The following is the Proposed Joint Final Pretrial Order to be considered at the

Final Pretrial Conference, which will be set by separate Order or Notice.  The current

Trial Setting on the Court's January, 2012 Trial Docket.

**A.     TRIAL COUNSEL FOR THE PARTIES**

**1.  Counsel for Plaintiff Eric Sanders**

> D. Scott Hemingway
> Texas Bar No. 09407880
> Eugenia S. Hansen
> Hemingway & Hansen, LLP
> 1700 Pacific Ave., Suite 4800
> Dallas, Texas  75201
> Ph: (214) 292-8301
> Fax: (214) 739-5209
> shemingway@hh-iplaw.com

**2.  Counsel for Defendant Harold H. Flanders**

> Harold H. Flanders
> 904 Sweetwater Cove
> Round Rock, Texas  78681
> Phone:  (512) 218-4814
> Fax: (512) 551-3866
> Hhf56@yahoo.com

**B.      STATEMENT OF JURISDICTION**

1.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338, and 1367 because there is complete diversity of citizenship between the Plaintiff and the Defendants, the amount in controversy exceeds $75,000, there is a Federal Question involved because this civil action arises under the Patent laws of the United States.  This Court has either original or supplemental jurisdiction over all of the claims at issue in this Action.

2.      Venue properly lies in the Western District of Texas, Austin Division, pursuant to 28 U.S.C. §§1391(b)-(c) and 1400(a).

3.      Neither party disputes that this Court has subject matter jurisdiction as well as personal jurisdiction in this case.

**C.      STATEMENTS OF THE PARTIES**

**A brief statement of the nature of the case and the contentions of the parties.**

In the fall of 2000, Plaintiff Eric M. Sanders retained Defendant Harold H. Flanders, then a senior patent attorney with experience spanning 34 years and 400-500 patent filings, as counsel to prepare and file patent applications.  Plaintiff wished to protect and market his invention of effervescent mouthwash cleanser tablets and containment devices.  Over the next several years, Defendant filed at least six patent applications with the United States Patent and Trademark Office (USPTO) covering Plaintiffs initial invention and successive improvements.

Each of the filings made with the USPTO was incomplete at the time of filing; each required additional fees or documentation to complete the application process. Defendant concedes that he was aware that non-completion of the required application

parts would result in the eventual deemed abandonment of the patent application by the USPTO.  Subsequently, each patent application filed on behalf of Plaintiff went into "abandoned" status because no further items were filed to complete the applications.  A patent application becomes "abandoned" and ceases to move toward successful examination, if, after a certain period of time following notice provided by the USPTO, deficiencies in the application are not addressed.

Between 2000 and 2009, Defendant did not notify Plaintiff about the missing parts of the applications or about the notice of abandonment received regarding each of the applications.  Defendant also concedes that he allowed Plaintiff to proceed with a belief that all patent applications filed on Plaintiff's behalf were "pending."  Plaintiff contends that Defendant intentionally hid a strategy of filing, abandonment, and re-filing and misled Plaintiff regarding the patents' true status.

Defendant claims to have had communication with Plaintiff regarding his strategy of abandonment after the first application was abandoned prior to August 2009, but no other communications regarding the abandonment strategy employed by him in handling the Plaintiff's patent filings.  Further, Defendant asserts that his broad definition of "pending" used to describe the status of Plaintiffs patents was part of a beneficial strategy for the Plaintiff to allow Plaintiff to pursue investment opportunities for the invention.

On August 30, 2009, Plaintiff independently discovered that all patent applications filed on his behalf by Defendant were in "abandoned" status. Then, in December 2009, Plaintiff initiated this suit, with claims for: (1) legal malpractice, professional negligence, fraud, and negligent misrepresentation, (2) breach of fiduciary duty, and (3) gross negligence.

Defendant responds that the Plaintiff allegedly knew of the patents' abandoned status and suffered no damages from the Defendants' actions.  Defendant also claims that there is a fact question regarding whether Plaintiff's patent applications each had a patentable distinction from prior art.  The Plaintiff contests these positions raised by the Defendant.

**D.    STIPULATIONS AND UNCONTESTED FACTS AND LAWS**

**1.    The following material facts are admitted by the parties and require no proof:**

1.      In the fall of 2000, Plaintiff Eric M. Sanders retained Defendant Harold H. Flanders, then a senior patent attorney with experience spanning 34 years and 400-500 patent filings, as counsel to prepare and file patent applications.

2.      Plaintiff wished to protect and market his invention of effervescent mouthwash cleanser tablets and containment devices.

3.      Over the next several years, Defendant filed at least six patent applications with the United States Patent and Trademark Office (USPTO) covering Plaintiffs initial invention and successive improvements.

4.      Each of the filings made with the USPTO was incomplete at the time of filing; each required additional fees or documentation to complete the application process.

5.      Defendant concedes that he was aware that non-completion of the required application parts would result in the eventual deemed abandonment of the patent application by the USPTO.

6.      Subsequently, each patent application filed on behalf of Plaintiff went into "abandoned" status because no further items were filed to complete the applications.

7.      A patent application becomes "abandoned" and ceases to move toward successful examination, if, after a certain period of time following notice provided by the USPTO, deficiencies in the application are not addressed.

8.      Between 2000 and 2009, Defendant did not notify Plaintiff about the missing parts of the applications or about the notice of abandonment received regarding each of the applications.

9.      Defendant allowed Plaintiff to proceed with a belief that all patent applications filed on Plaintiff's behalf were "pending."

10.     The Defendant, Mr. Flanders, is an attorney at law, licensed to practice in the State of Texas, and Mr. Flanders is also admitted to practice before the United States Patent & Trademark Office ("USPTO").

**2. The following material facts, although not admitted, will not be contested at trial:**

None at this time.

**3. The following issues of law are uncontested and stipulated to by the parties:**

1.      To prevail on a Texas legal-malpractice claim and professional negligence, a plaintiff must show that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiffs injuries, and (4) damages occurred. *Alexander v. Turtur & Assoc. Inc.*, 146 S.W.3d 113, 117 (Tex. 2004).

2.      Common-law fraud in Texas consists of six elements: (1) A material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of

the truth and as a positive assertion, (4) the speaker made the representation with the intent that the other party should act upon it, (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury. *In re FirstMerit Bank, NA.*, 52 S.W.3d 749, 758 (Tex. 2001).

3.      Further, fraud by nondisclosure is a subcategory of fraud, where a party had a duty to disclose. *Schiumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).

4.      To prevail on a claim of negligent misrepresentation, the Plaintiff must establish the following elements: (1) a representation was made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (2) the defendant supplied "false information" for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land BankAss 'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

5.      To prevail on the claims of breach of fiduciary duty, the Plaintiff must show: (1) a fiduciary relationship between the plaintiff and defendant, (2) the breach of that duty by defendant, and (3) injury to the plaintiff or benefit to the defendant resulting from the breach. *Navigant Consulting, Inc. v Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

6.      A fiduciary duty does arise, as a matter of law, from an attorney-client relationship. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).  However, the breach-of-fiduciary-duty inquiry in this case is inextricably tied to the breach issue in the legal-

malpractice claim.  Whether or not the Defendant breached his fiduciary duty will turn upon the same fact questions that determine the legal malpractice claim.

7.     To support a finding of gross negligence, two additional elements must be found in the defendant's actions over the elements that must be shown for breach of fiduciary duty, which include: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

**E.     CONTESTED ISSUES OF FACT AND LAW**

**1. The following are the material issues of law and fact to be tried and decided:**

1. Whether the Defendants' conduct constitutes actionable claims for: (1) legal malpractice, fraud, professional negligence, and negligent misrepresentation, (2) breach of fiduciary duty, and (3) gross negligence.

2.   Whether, in the course of the representation, the Defendant patent attorney had an attorney-client relationship with the plaintiff that raised a duty or obligation on the Defendants' part, which he failed to carry out for the Plaintiff inventor in at least the following particulars, each or any one of which was the proximate cause of Plaintiff's damages, as follows:

a.     Failing to take proper and lawful means to timely file a complete patent application, such that original and all subsequent patents went abandoned, failed

to be examined by the USPTO, and were precluded any and all opportunity to become a fully issued United States patent;

b.      Failing to take proper and lawful means to timely respond to notices of deficiency, notices of missing parts, or notices of abandonment, such that original and all subsequent patents went abandoned, failed to be examined by the USPTO, and were precluded any and all opportunity to become a fully issued United States patent;

c.      Failing to take proper and lawful means to timely file and prosecute Plaintiff's patent application, such that each invention covered by each of the Defendants' prepared patent application went abandoned, failed to be examined by the USPTO, and were precluded any and all opportunity to become a fully issued United States patent;

d.      Failing to represent the Plaintiff inventor's interest fully, adequately and competently in the filing and prosecution of the patent applications, including the failure to properly file a complete application, failure to respond to notices of deficiency (e.g. notices of missing parts), failure to avoid abandonment of the filed patent applications, failure to inform the client of the true status of his patent applications, concealment from the client of the true status of his patent applications, misrepresenting to the client the true status of his patent applications;

e.      Failing to adequately prepare and prosecute the patent applications before the USPTO;

f.      Failing to avoid abandonment of the filed patent applications before the USPTO;

g.      Failing to inform the client of the true status of his patent applications as not pending, but abandoned, before the USPTO, and mistakes made by the Defendant in filing a complete patent application and/or not responding to notices of deficiency (notice of missing parts);

h.      Concealing from the client the true status of his patent applications as not pending, but abandoned, before the USPTO and mistakes made by the Defendant in filing a complete patent application and/or not responding to notices of deficiency (notice of missing parts);

i.      Failing to inform Plaintiff of the Defendants' mistakes and negligent acts and omissions, despite having a fiduciary duty to do so;

j.      Making misrepresentations to the Plaintiff inventor, including (but not limited to) Misrepresenting to the client the true status of his patent applications as being a pending, not abandoned, matter before the USPTO; and,

k.      All other acts, conduct and omissions of Mr. Flanders which constitute a mistake, negligent acts, omissions and the proximate cause of damage to the Plaintiff.

3.   Whether the Defendant breached a fiduciary duty to the Plaintiff.

4.   Whether the Defendant patent attorney's conduct was below the standard of care applicable to attorneys at law representing clients in similar matters, and thereby constituted gross negligence.

5.    Whether as a proximate result of the Defendants negligence, fraud, malpractice, negligent misrepresentation, and breach of fiduciary duties, the Plaintiff inventor has suffered damages and should be compensated for those damages, as well as receive any exemplary or punitive damages?

6.    Whether the "failure" to become a "fully" issued United States patent and other issues as enumerated in Paragraph 2 of Section E above, caused any damage to Plaintiff prior to August 2009?

7.    Whether there is any basis for references to a "mistake" or "negligent acts and omissions" as used in Paragraph 2 of Section E above?

8.    If any allegations of Paragraph 2 of Section E above was the proximate cause of any damage to Plaintiff?

9.    If prior art anticipates and makes obvious the alleged invention of Plaintiff?

10.    If the Defendants' efforts were properly directed to preserving Plaintiff's intellectual property at a minimum cost and exposure to Plaintiff until a patentable combination could be found?

11.    The initial attorney-client contacts between the Plaintiff and Defendant occurred in the fall of 2000, when the attorney-client relationship began.  Mr. Sanders, the inventor, conferred with Mr. Flanders, a patent attorney, about the Plaintiff's invention, which related to a tablet or solid that could be added to water to produce a effervescent mouth wash with certain unique properties.

12.     After the attorney-client relationship was established, the Plaintiff inventor provided the Defendant patent attorney with information regarding his invention via emails, letters, memos, and telephone calls.

13. The Plaintiff included in his descriptions of the invention the method of making and the ingredients to be used in the effervescent mouthwash tablets, such as green tea, sodium bicarbonate, citric acid, sodium benzoate, sorbitol, EDTA and mint color in certain specified proportions and percentages.

14. Samples and packets of ingredients were also provided to the Defendant patent attorney after the attorney-client relationship was established.

15. The invention is a single tablet or solid that can be placed in water (or another liquid) to provide the user with the benefits of an effervescent mouthwash, including the health benefits of a dental wash, a mouth freshener, and supplemental health benefits of "green tea."

16. By providing the invention in a tablet or powder form, various conveniences can be achieved over pre-prepared liquid mouthwashes.

17. For example, travelers can avoid the need to pack liquid mouthwash in their luggage, which can avoid liquid leaks into the luggage and allow an air traveler to pass liquid volume restrictions (maximum 3 oz.) at airport screening security.  Further, combat soldiers can use the mouthwash in the field by simply combining a tablet with water or liquid.

### *The First Patent Application*

18. The Defendant patent attorney prepared an initial draft patent application on or around March 22, 2001, with a file identification of EMS 0101.  EMS in the Defendant's file name appears to identify the initials of the Plaintiff, Eric M. Sanders.

19. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney after the preparation of this first draft application, which was incorporated into a revised draft patent application on or around May 5, 2001.  This revised draft patent application was given a file identification of EMS 0102.  This revised draft patent application included amendments to the claimed invention made by the Defendant patent attorney.

20. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney after the preparation of this second draft application, which was incorporated into a revised draft patent application on or around July 12, 2001.  The draft application was approximately 20 pages in length, and given a file identifier of EMS 0103.  The EMS 103 draft included additional information provided by the inventor, revisions to the earlier drafts, and amendments to the claimed invention.

21. The Defendant patent attorney issued a billing statement to the Defendant on Aug. 30, 2001 requesting a payment on a balance due of $3355.00.

22. The Plaintiff inventor signed an inventor's declaration on or around Sept 20, 2001 related to the invention disclosed in the EMS 103 draft application.

23. The Defendant patent attorney filed the first patent application on October 15, 2001, and the patent application was given a Serial No. 09/977,079 by the United States Patent & Trademark Office (USPTO).

24. The application as filed on October 15, 2001 was not a complete patent application filing because it did not include all necessary documents and fees.

25. The USPTO issued a notice of missing parts to the Defendant patent attorney, which was mailed to the Defendant patent attorney on November 15, 2001.

26. As received by the Defendant patent attorney, specific additional documents and/or fees were identified to the Defendant patent attorney as being needed to complete the patent application filing.

27. Despite knowing about the need to provide additional documents and/or fees to complete the patent application, the Defendant patent attorney failed to provide such additional documents and/or fees to the USPTO.

28. The patent application filed on October 15, 2001, was abandoned as incomplete application on January 16, 2002 because the Defendant patent attorney failed to provide the requested additional documents and/or fees.

29. The Defendant patent attorney never notified Plaintiff inventor of receipt of notice of missing parts, the need to supplement the application to satisfy the notice of missing parts, the abandonment of the patent application, or the receipt of the notice of abandonment.

30. In fact, the Defendant patent attorney purposefully gave the false impression to the Plaintiff inventor for eight years that this patent application, filed October 15, 2001, was a pending and active application being examined by the USPTO until the Plaintiff inventor confronted the Defendant patent attorney with the Plaintiff's discovery (on or around August 31, 2009) that this initial application, as well as five other

applications filed subsequently, were all abandoned patent applications not pending at the USPTO or being examined by the USPTO.

### ***Updates Requested, Abandonment Concealed***

31. From 2002 through 2004, the Plaintiff inventor continued to correspond with the Defendant patent attorney, and would explicitly request an update on the status of the pending cases and subsequent applications being prepared by the Defendant patent attorney.

32. For example, on February 1, 2003, the Plaintiff inventor sent the Defendant patent attorney the following communication:  "I would like to get a payoff amount from you so we can wrap the patent process up.  If you could get that $$ amount, I will mail a check off.  Hope all is well and I would like to see any updates you made."

33. The Defendant patent attorney issued a billing statement to the Plaintiff inventor on June 19, 2004 with a balance due of $2755.00.

34. In response to these continued communications, the Defendant patent attorney continued to purposefully give the false impression to the Plaintiff inventor that the initial patent application, filed October 15, 2001, was a pending and active application being examined by the USPTO.  Even though given the opportunity to disclose the status of the application, the Defendant patent attorney never notified Plaintiff inventor about the abandonment of the initial patent application or the receipt of the notice of abandonment regarding that application.

35. In fact, on November 8, 2004, the Defendant patent attorney communicated to the Plaintiff inventor that he was not available to go on a business trip with the inventor, but stated "we have a case filed and I have written it with the idea in mind that from it

other cases may be filed to provide specific coverage as you approach the various commercial embodiments."  The concealment of the patent application abandonment is shown by the November 8, 2009 statement, "we have a case filed."

### *The Second Patent Application*

36. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney from 2002 through 2004, which was incorporated into a second patent application.

37. The draft application was 41 pages in length, and given a file identifier of EMS 0401.  The EMS 401 draft included additional information provided by the inventor, revisions to the earlier drafts, and amendments to the claimed invention.

38. The Plaintiff inventor signed an inventor's declaration on or around November 1, 2004 related to the invention disclosed in the EMS 401 draft application.

39. The Defendant patent attorney issued a billing statement to the Plaintiff inventor on November 15, 2004, requesting payment of a balance due of $1755.00.

40. The Defendant patent attorney filed the second patent application on November 22, 2004, and the patent application was given a Serial No. 10/944,187 by the United States Patent & Trademark Office (USPTO).

41. The USPTO issued a notice of missing parts to the Defendant patent attorney, which was mailed to the Defendant patent attorney on March 10, 2005.  As received by the Defendant patent attorney, specific additional documents and/or fees were identified to the Defendant patent attorney as being needed to complete the patent application filing.

42. Despite knowing about the need to provide additional documents and/or fees to complete the patent application, the Defendant patent attorney failed to provide such additional documents and/or fees to the USPTO.

43. The patent application filed on November 22, 2004, was abandoned as incomplete application May 10, 2005 because the Defendant patent attorney failed to provide the requested additional documents and/or fees.

44. A Notice of Abandonment was mailed by the USPTO to the Defendant patent attorney on November 15, 2005.

45. The Defendant patent attorney issued a billing statement to the Plaintiff inventor on December 31, 2004, requesting payment of a balance due of $3345.00.

46. The Defendant patent attorney never notified Plaintiff inventor of receipt of notice of missing parts, the need to supplement the application to satisfy the notice of missing parts, the abandonment of the patent application, or the receipt of the notice of abandonment.

47. In fact, the Defendant patent attorney purposefully gave the false impression to the Plaintiff inventor for years that this patent application, filed November 22, 2004, was a pending and active application being examined by the USPTO until the Plaintiff inventor confronted the Defendant patent attorney with the Plaintiff's discovery (on or around August 31, 2009) that this second application, as well as five other applications filed by the Defendant, were all abandoned patent applications not pending at the USPTO or being examined by the USPTO.

### _The Third Patent Application_

48. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney after 2004, which was incorporated into a third patent application.  The third application included additional information provided by the inventor, revisions to the earlier drafts, and amendments to the claimed invention.

49. The Defendant patent attorney filed the third patent application on December 5, 2005, and the patent application was given a Serial No. 11/294,753 by the United States Patent & Trademark Office (USPTO).

50. The USPTO issued a notice of missing parts to the Defendant patent attorney, which was mailed to the Defendant patent attorney on January 11, 2006.  As received by the Defendant patent attorney, specific additional documents and/or fees were identified to the Defendant patent attorney as being needed to complete the patent application filing.

51. Despite knowing about the need to provide additional documents and/or fees to complete the patent application, the Defendant patent attorney failed to provide such additional documents and/or fees to the USPTO.

52. The patent application filed on December 5, 2005, was abandoned as incomplete application on March 14, 2006 because the Defendant patent attorney failed to provide the requested additional documents and/or fees.

53. A Notice of Abandonment was mailed by the USPTO to the Defendant patent attorney.

54. The Defendant patent attorney never notified Plaintiff inventor of receipt of notice of missing parts, the need to supplement the application to satisfy the notice of

missing parts, the abandonment of the patent application, or the receipt of the notice of abandonment.

55. In fact, the Defendant patent attorney purposefully gave the false impression to the Plaintiff inventor for years that this third patent application, filed December 5, 2005, was a pending and active application being examined by the USPTO until the Plaintiff inventor confronted the Defendant patent attorney with the Plaintiff's discovery (on or around August 31, 2009) that this third application, as well as five other applications filed by the Defendant, were all abandoned patent applications not pending at the USPTO or being examined by the USPTO.

### ***The Fourth Patent Application***

56. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney after 2005, which was incorporated into a fourth patent application.  The fourth application was given the file number EMS 0601, and included additional information provided by the inventor, revisions to the earlier drafts, and amendments to the claimed invention.

57. The Defendant patent attorney filed the fourth patent application on May 26, 2006, and the patent application was given a Serial No. 11/440,573 by the United States Patent & Trademark Office (USPTO).

58. The USPTO issued a notice of missing parts to the Defendant patent attorney, which was mailed to the Defendant patent attorney on June 15, 2006.  As received by the Defendant patent attorney, specific additional documents and/or fees were identified to the Defendant patent attorney as being needed to complete the patent application filing.

59. Despite knowing about the need to provide additional documents and/or fees to complete the patent application, the Defendant patent attorney failed to provide such additional documents and/or fees to the USPTO.

60. The patent application filed on May 26, 2006 was abandoned as incomplete application on August 16, 2006 because the Defendant patent attorney failed to provide the requested additional documents and/or fees.

61. A Notice of Abandonment was mailed by the USPTO to the Defendant patent attorney on February 22, 2007.

62. The Defendant patent attorney never notified Plaintiff inventor of receipt of notice of missing parts, the need to supplement the application to satisfy the notice of missing parts, the abandonment of the patent application, or the receipt of the notice of abandonment.

63. In fact, the Defendant patent attorney purposefully gave the false impression to the Plaintiff inventor for years that this fourth patent application, filed May 26, 2006, was a pending and active application being examined by the USPTO until the Plaintiff inventor confronted the Defendant patent attorney with the Plaintiff's discovery (on or around August 31, 2009) that this fourth application, as well as five other applications filed by the Defendant, were all abandoned patent applications not pending at the USPTO or being examined by the USPTO.

### *The Fifth Patent Application*

64. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney after 2005 including regarding "phytochemicals," "flavonoids and flavanols," "polyphenols," and "antimicrobial agents," which was incorporated into a

fifth patent application.  The fifth application was given file no. EMS 0602, and included

additional information provided by the inventor, revisions to the earlier drafts, and

amendments to the claimed invention.

65. The Defendant patent attorney filed the fifth patent application on August 4,

2006, and the patent application was given a Serial No. 11/499,918 by the United States

Patent & Trademark Office (USPTO).

66. The USPTO issued a notice of missing parts to the Defendant patent attorney,

which was mailed to the Defendant patent attorney on or around August 15,

2006.  As received by the Defendant patent attorney, specific additional documents

and/or fees were identified to the Defendant patent attorney as being needed to complete

the patent application filing.

67. Despite knowing about the need to provide additional documents and/or fees

to complete the patent application, the Defendant patent attorney failed to provide such

additional documents and/or fees to the USPTO.

68. The patent application filed on August 4, 2006 was abandoned as incomplete

application on October 16, 2006 because the Defendant patent attorney failed to provide

the requested additional documents and/or fees.

69. A Notice of Abandonment was mailed by the USPTO to the Defendant patent

attorney.

70. The Defendant patent attorney never notified Plaintiff inventor of receipt of

notice of missing parts, the need to supplement the application to satisfy the notice of

missing parts, the abandonment of the patent application, or the receipt of the notice of

abandonment.

71. In fact, the Defendant patent attorney purposefully gave the false impression to the Plaintiff inventor for years that this fourth patent application, filed August 4, 2006, was a pending and active application being examined by the USPTO until the Plaintiff inventor confronted the Defendant patent attorney with the Plaintiff's discovery (on or around August 31, 2009) that this fifth application, as well as five other applications filed by the Defendant, were all abandoned patent applications not pending at the USPTO or being examined by the USPTO.

### ***The Sixth Patent Application***

72. Additional information was provided by the Plaintiff inventor to the Defendant patent attorney after 2005 including "white tea," "camellia siensis ('tea')," and "pet and animal market," which was incorporated into a sixth patent application.  The sixth application was included additional information provided by the inventor, revisions to the earlier drafts, and amendments to the claimed invention.

73. The Defendant patent attorney filed the sixth patent application on March 9, 2007, and the patent application was given a Serial No. 11/716,533 by the United States Patent & Trademark Office (USPTO).

74. The USPTO issued a notice of missing parts to the Defendant patent attorney, which was mailed to the Defendant patent attorney on or around March 28, 2007.  As received by the Defendant patent attorney, specific additional documents and/or fees were identified to the Defendant patent attorney as being needed to complete the patent application filing.

75. Despite knowing about the need to provide additional documents and/or fees to complete the patent application, the Defendant patent attorney failed to provide such additional documents and/or fees to the USPTO.

76. The patent application filed on March 9, 2007 was abandoned as incomplete application on May 30, 2007 because the Defendant patent attorney failed to provide the requested additional documents and/or fees.

77. A Notice of Abandonment was mailed by the USPTO to the Defendant patent attorney on December 3, 2007.

78. The Defendant patent attorney never notified Plaintiff inventor of receipt of notice of missing parts, the need to supplement the application to satisfy the notice of missing parts, the abandonment of the patent application, or the receipt of the notice of abandonment.

79. In fact, the Defendant patent attorney purposefully gave the false impression to the Plaintiff inventor for years that this fourth patent application, filed March 9, 2007, was a pending and active application being examined by the USPTO until the Plaintiff inventor confronted the Defendant patent attorney with the Plaintiff's discovery (on or around August 31, 2009) that this sixth application, as well as five other applications filed by the Defendant, were all abandoned patent applications not pending at the USPTO or being examined by the USPTO.

### _Draft of Seventh Patent Application – Never Filed_

80. On or around April 19, 2007, the Defendant patent attorney recommended that "We should file a patent application covering your packaging and vessels"

81. After receiving further information from inventor regarding the packaging and vessels that could be used with the invention, the Defendant incorporated that material into a draft patent application, entitled "Packaging," which was given a file number EMS 0702.

82. There is no indication that this patent application was ever filed, and there is no evidence that the Defendant patent attorney notified the Plaintiff inventor that the EMS 0702 patent application was never filed or was not pending at the USPTO.

83. On February 1, 2008, the Plaintiff inventor sent the Defendant patent attorney a communication that read: "I wanted to follow up to see if you have heard anything on the main patent or any of the other patents we have submitted?  Also, want to make sure we have some items covered in the all the patents except the packaging patent,"  and indicated that "Items need to be associated with each patent (mouthwash, probiotics) 1. Form – tablet, powder, gel caps and gum, 2. green and white tea associated with each patent, 3. Vitamins and minerals associated with each patent."

84. On February 1, 2008, the Plaintiff inventor sent a communication to the Defendant patent attorney asking the questions "Where do we stand on getting the probiotic patent submitted?"  and "What is my bill adding up to these days?"

85. Between February and June of 2008, the Plaintiff inventor sent communications to the Defendant patent attorney indicating that his desire to "add to the mouthwash case the use of calcium chloride for reminerialization of the teeth and enamel," and his desire to not re-file pending mouthwash cases, but to add that reminerialization concept to any "patent issued and ammend (sic) the patent to strengthen it further."

86. Despite exhibiting a clear understanding that patent applications were pending before the USPTO and being examined, the Plaintiff inventor was never notified of the abandonment of his patent applications by the Defendant patent attorney.

87. Inventor did not find out abandoned status of this application until on or around August 30, 2009, when the inventor contacted the USPTO directly and discovered the abandoned status for the first time on or around August 30, 2009.

88. The abandonment of six filed patent applications dating back as early as a 2001 patent application filing was concealed by the Defendant patent attorney.

89. The Defendant patent attorney only acknowledged the abandoned status of these patent applications after being confronted by the Plaintiff inventor on August 31, 2009, after the Plaintiff inventor's first discovery of the abandonment of these patent application directly from the USPTO on or around August  31, 2009.

90. There is a duty imposed on a patent attorney not to file patent applications with the U.S. Patent & Trademark Office that the patent attorney knows are invalid or anticipated by prior art.

91. The Defendant complied with that duty by his preparation and filing of each of the Plaintiff's applications with the U.S. Patent & Trademark Office.

92. The Defendant did not provide to the Plaintiff any notices or written requests for action as received from the U.S. Patent & Trademark Office at any point in his representation from 2000 to 2009.

93. The Defendant did not provide adequate notice of the potential or actual abandonment of the Plaintiff's filed patent application to the Plaintiff so as to keep him "in the dark" about the true status of the filed applications.

**F.     ESTIMATED LENGTH OF TRIAL**

The parties agree that the case can be tried in 2-3 trial days.

**G.     OTHER MATERIALS TO BE SUBMITTED**

The parties will be separately filing the following:

1.     Proposed Voir Dire
2.     Proposed Jury Instructions
3.     Witness List
4.     Deposition Designations
5.     Exhibit List
6.     Motions in Limine (with Proposed Order)

**H.     ADDITIONAL MATTERS**

1.     If the prevailing party, the Plaintiff intends to prove up attorneys' fees by

submitting affidavits of attorneys' fees after trial.


Date:  December 2, 2011                         Respectfully submitted,

/s/ D. Scott Hemingway
D. Scott Hemingway
Attorney-in-Charge
Texas Bar No. 09407880
Hemingway & Hansen, LLP
1717 Main Street, Suite 2500
Dallas, Texas  75201
Ph: (214) 292-8301
Fax: (214) 739-5209
**Attorneys for**
**Plaintiff Eric Sanders**

/s/ Harold H. Flanders
Harold H. Flanders
904 Sweetwater Cove
Round Rock, Texas  78681
Phone:  (512) 218-4814
Fax: (512) 551-3866
Hhf56@yahoo.com
**Defendant Flanders**

Based on the foregoing, IT IS ORDERED that this Proposed Final Pretrial Order jointly submitted by the parties is hereby APPROVED and ADOPTED as the official Pretrial Order of this Court.

Dated this _____ day of _____, 2011.

_____
Honorable Lee Yeakel
UNITED STATES DISTRICT JUDGE